# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT SANDERS, M54914,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 25-cv-663-DWD |
| | ) |
| **JOHN BARWICK,** | ) |
| **SGT. WALKER,** | ) |
| **C/O O'BEAR,** | ) |
| **C/O TURNEY,** | ) |
| **C/O WIZKAMP,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Robert Sanders, an inmate of the Illinois Department of Corrections (IDOC) housed at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his rights.  (Doc. 1). Plaintiff's allegations concern an alleged assault on April 14, 2025, and his subsequent need for medical care. (Doc. 1).  Since filing the complaint, Plaintiff has also filed a Motion for In Camera Review (Doc. 3), and a Motion for a Temporary Restraining Order (Doc. 12).

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law

is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Complaint

Plaintiff alleges that on April 14, 2025, he was involved in an altercation with staff, which he emphasizes is not the focal point of this lawsuit. However, during the altercation, he alleges he was pepper sprayed and battered by staff. (Doc. 1 at 7). He alleges that after the encounter he was escorted to restrictive housing and was placed in a shower. A mental health staff member approached and asked if he was suicidal or homicidal, and he declined. A head officer of intel or internal affairs also came and asked plaintiff about his injuries, and he documented them via photographs. Nurse Diane (a non-party) then approached and asked if he needed healthcare. Plaintiff said he needed care, but staff would not allow Diane to take him to the medical unit. Diane attempted to wash his eyes in a sink, and then in a room, to no avail. Plaintiff was then guided to a cell and was still largely unable to see due to the residual pepper spray.

While sitting in the cell, Plaintiff endured continued pain related to the pepper spray that coated his face and upper body. He began coughing and vomiting, and pain developed in his ribs, neck, back, wrist, ankle, and head. Nurse Diane visited his cell and indicated she would at least relay his medical needs to a physician's assistant, Ashini Desai (non-party). (Doc. 1 at 8).

Plaintiff also attempted to ask Defendant Wizkamp for medical care while Wizkamp passed out meal trays, but Wizkamp got annoyed and threatened to write

Plaintiff a ticket. (Doc. 1 at 8). That evening, Plaintiff also asked Defendants Walker, Turney, and O'Bear for medical care. He claims he vomited in their presence, but they refused assistance. Plaintiff alleges Walker threatened him, and Defendants O'Bear and Turney echoed the threats. (Doc. 1 at 9). Plaintiff alleges that as he got more desperate for medical attention, he voiced suicidal ideation, but these three guards ignored him. At several points throughout the evening, he turned around and placed his hands through his chuckhole so he could be handcuffed and taken for care, but the Defendants shoved his hands back into the cell and smashed them in the chuckhole port. (Doc. 1 at 9).

Plaintiff further alleges that Walker attempted to bribe inmates in surrounding cells to harass him. As a result, some fellow inmates have now begun to harass him and to make threats about beating or killing him. (Doc. 1 at 10). He alleges Defendants Turney and O'Bear witnessed Walker's efforts to bribe inmates but did nothing. Other inmates have come forward to support Plaintiff, and he attached affidavits from fellow inmates to his complaint. He claims one of the inmates who refused to harass him flooded the gallery. (Doc. 1 at 12). Plaintiff alleges that the flood sent urine and human waste into his cell, but Walker refused him cleaning supplies. (Doc. 1 at 12).

Plaintiff also alleges that on April 14, 2025, he wrote a grievance about the incidents described in the complaint, but officers would not accept it for filing and have instead told him he has to wait for a counselor to circulate a grievance box, which happens once a week. (Doc. 1 at 12). He alleges that he is in constant fear of serious harm at the hands of Defendant Walker and others. Plaintiff also alleges he spoke to another non-party officer on April 15 about his medical needs, but the officer simply told him to

file a medical request slip, which may take up to 3 days for processing. (Doc. 1 at 13). Plaintiff claims he is still coated in pepper spray, his body is in pain, he has not received any medications, and he is desperate for care. (Doc. 1 at 13-14). Plaintiff seeks medical attention, a shower, medication, and protection from Defendant Walker. (Doc. 1 at 22). In support of the complaint, Plaintiff submitted a copy of his alleged emergency grievance that he drafted for filing, and affidavits from himself and multiple inmates.

A few weeks after filing the complaint, Plaintiff filed a Motion for a Temporary Restraining Order. (Doc. 12). In the Motion, he claims that Defendant Walker is the 5-day sergeant assigned to his housing unit. He alleges that on April 22, 2025, he attempted to file multiple grievances about Walker's conduct, but counselor King (a non-party) refused to accept the grievances. Plaintiff then spoke to a lieutenant about the issue and also wrote a letter to a sergeant about his issues accessing the grievance process. He claims that King's refusal to let him access the grievance process may obstruct his ability to litigate this matter, and it is also a violation of Pinckneyville's Offender manual. Plaintiff goes on to allege that Walker continues to condone threats against his safety, and he is worried Walker may facilitate harm by placing another inmate in his cell to attack him.

Based on the allegations in the Complaint, the Court designates the following claims:

> **Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Wizkamp, Walker, Turney, and O'Bear for their ongoing refusal of medical treatment for Plaintiff's alleged injuries that they observed on April 14, and 15, 2025;**

> **Claim 2:** Eighth Amendment cruel and unusual punishment claim against Defendants Walker, Turney, and O'Bear for their alleged harassing and threatening conduct towards Plaintiff on April 14, and 15, 2025;

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Analysis

Plaintiff's claims are sufficient to proceed against Defendants Wizkamp, Walker, Turney, and O'Bear, whom he alleges have seen his injuries and have refused care. Plaintiff also alleges Walker, Turney and O'Bear have harassed and threatened him, and they have bribed other inmates to do the same. Although plain verbal harassment is generally not sufficient for a claim, here Plaintiff alleges more in so much as he claims these three have taken steps to coordinate ongoing harassment from inmates in neighboring cells. At this early juncture, this may be enough to sustain a claim for cruel and unusual punishment. Thus, Claims 1 and 2 may proceed as pled.

By contrast, Plaintiff named Warden Barwick as a defendant, but he has failed to state a sufficient claim against Barwick because he is named in the caption but is not mentioned anywhere else in the complaint. Naming a defendant without discussing their personal role is insufficient to state a claim. *See e.g., Black v. Lane*, 22 F.3d 1395, 1401 n. 8

(7th Cir. 1994) (merely naming a defendant in the caption is insufficient to state a claim). Thus, Defendant Barwick is not subject to any claim in his personal capacity. However, because Plaintiff seeks injunctive relief, Barwick shall remain a party in official capacity only.

One additional topic is worth mention. In his complaint and various pleadings, Plaintiff continues to state that he filed his case under 28 U.S.C. § 1915(g) because he is in imminent danger of serious physical injury. Section 1915(g) allows an inmate who has received three strikes to proceed without the prepayment of a filing fee if he can demonstrate that he faces imminent danger. A review of publicly available records does not demonstrate that Plaintiff has three strikes, and he checked a box on his IFP application indicating he does not have three strikes. (Doc. 2 at 1). As such, there is no need for him to cite to § 1915(g), and it does nothing to bolster his claims.

## Motions

Along with the Complaint, Plaintiff filed a Motion asking the Court to conduct an in-camera interview to observe his injuries. (Doc. 3). He alleges medical staff refuse to get involved in his situation because they are concerned about the risk of lawsuits, and he is concerned that without intervention from the Court or medical personnel, his injuries will heal before they can be documented. He further claims Walker continues to harass him. Subsequently, he filed a Motion to Inform the Court (Doc. 7) wherein he explained he had been afforded a shower to wash off the pepper spray, and he had been afforded pain medication. In the Motion to Inform, he also indicated an unidentified inmate came to his cell and threatened serious physical harm, but an unnamed officer

intervened. In his Motion for a Preliminary Injunction, Plaintiff complains about his lack of access to the grievance process, as well as ongoing harassment from Walker. (Doc. 12).

To seek a preliminary injunction, a plaintiff must establish: a likelihood of success on the merits of his claim; no adequate remedy at law; and, irreparable harm without the injunctive relief. See *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). As for the first requirement, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). "A movant's likelihood of success on the merits must be strong." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). A strong showing typically entails a demonstration of how the applicant intends to prove key elements of his case. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020); *Doe v. University of Southern Indiana*, 43 F.4th 784, 791-92 (7th Cir. 2022) (the court is not required to make inferences in the movant's favor when considering preliminary injunctive relief).

The Court must also decide whether an adequate remedy at law exists and whether the plaintiff will suffer irreparable harm without injunctive relief. Irreparable harm is harm which cannot be repaired. *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1998) ("Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for. The injury must be of a particular nature, so that compensation in money cannot atone for it."). The Court must then weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This

equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte, 735 F.3d at 665*.

An injunction that seeks an affirmative act by the respondent is a mandatory preliminary injunction and should be sparingly issued. *Mays, 974 F.3d at 818*. If injunctive relief is warranted, the Prison Litigation Reform Act provides that the injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief must be related to issues in the underlying lawsuit. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019).

First, as to the freestanding Motion for a Temporary Restraining Order, temporary restraining orders may not exceed 14 days. Fed. R. Civ. P. Rule 65(b)(2). Plaintiff plainly seeks relief that would endure for longer than 14 days in the form of medical care or access to the grievance process. Thus, rather than grant any short-term temporary relief, the Court will consider his request in terms of a request for a preliminary injunction.

In this light, his request is still largely beyond the scope of what this Court will grant in this case on the present pleadings. The majority of Plaintiff's assertions in the Motion (Doc. 12) focus on his interactions with Counselor King, a non-party to this case.

Injunctive relief must be limited to the claims and parties in the case, so Plaintiff's requests pertaining to King are outside the scope of appropriate authority in this case. Additionally, to the extent that Plaintiff is seeking the Court to mandate his access to the grievance process, there is not a protected interest in access to the grievance process itself. *See e.g.*, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (the existence of a grievance process and assertions about the functionality of the process do not give rise to a protected liberty interest). Thus, it would be inappropriate to grant Plaintiff injunctive relief by forcing the operation of the grievance process both because counselor King is not a party to this case, and because Plaintiff does not have a protected liberty interest in access to the grievance process.

To the extent Plaintiff otherwise seeks injunctive relief from Defendant Walker's ongoing harassment, or because he still needs medical care, his allegations in this respect are rather vague. Aside from Walker's threats and conduct on April 14 or 15th, Plaintiff now only says in his Motion (Doc. 12) that Walker "is refusing to try to put a end to what he started," and is condoning ongoing threats against him by fellow inmates. A non-specific threat of harm, such as the suggestion that unidentified inmates are making vague threats, is not enough for the Court to grant injunctive relief. As to the one specific instance when an inmate threatened Plaintiff, he stated in his Motion to Inform that staff intervened and stopped the incident. Additionally, injunctive relief must be narrowly tailored, and the Court cannot narrowly tailor relief where the nature of the exact threat is ambiguous. Thus, the Court will not grant any relief tailored to Walker's alleged conduct at this juncture.

Finally, to the extent that Plaintiff may still need emergency medical care, he has not detailed his injuries. In his Motion for In-Camera review (Doc. 3) he expressed concern his injuries would heal before he could be seen, however, in the complaint he also explicitly stated internal affairs or intel took photographs on the day of the incident. Additionally, in the Motion to Inform, he indicated he had received a shower and pain medication. (Doc. 7). To the extent that Plaintiff may still have injuries that may need treatment, he may choose to file a renewed motion detailing the specific injuries, and his attempts to get care.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survives initial screening as described above against Defendants Wizkamp, Walker, Turney, and O'Bear. Plaintiff has not stated a freestanding claim against Barwick in his individual capacity, but his demand for relief does include a request for injunctive relief, **so Barwick will remain in this suit in official capacity only. Barwick need not file an answer.**

The Clerk of Court is **DIRECTED** to prepare for Defendants Wizkamp, Walker, Turney, O'Bear, and Barwick (official capacity only for injunctive relief): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were

sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with

this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. Fed. R. Civ. P. 41(b).

The Clerk of Court is DIRECTED to enter the standard HIPAA protective order in this case.

Plaintiff's Motion for In-Camera Review (Doc. 3), his Motion to Inform (Doc. 7), and his Motion for a Temporary Restraining Order (Doc. 12) are **DENIED** without prejudice for the reasons explained in this Order.

**IT IS SO ORDERED.**

Dated: April 30, 2025

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.