IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT SANDERS, M54914, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 25-cv-663-DWD |
| SGT. WALKER, | ) | |
| C/O O'BEAR, | ) | |
| C/O TURNEY, | ) | |
| C/O WIZKAMP, | ) | |
| WARDEN OF MENARD, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Robert Sanders, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center ("Centralia"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Pinckneyville Correctional Center. The lawsuit concerns the alleged denial of medical care on April 14 and 15, 2025, and alleged harassment and threats on the same days. (Doc. 13). Defendants filed a Motion for Summary Judgment (Doc. 66) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 60). Plaintiff has timely responded. (Doc. 67). For reasons explained in this Order, the Defendants' Motion is granted, and this case is dismissed without prejudice. Plaintiff also has a pending Motion to Amend (Doc. 59), which will be denied for reasons detailed herein.

## BACKGROUND

Plaintiff initiated this lawsuit by signing a complaint on April 15, 2025, that was received for filing by the Court on Apri 17, 2025.  (Doc. 1).  In the complaint, Plaintiff alleged that he was pepper sprayed and sustained multiple injuries in an altercation with staff on April 14, 2025.  He alleged that Wizkamp, Turney, O'Bear, and Walker refused medical care that night despite the fact that he had visible injuries and vomited in their presence.  Plaintiff alleged that he wrote a grievance but staff would not accept it for filing and told him to keep it until the counselor circulated the grievance box — something he claimed happened only once a week.  He also alleged in the complaint that Walker enticed other inmates to harm and harass him, and Turney and O'Bear saw this but did not intervene.  Upon initial review, the Court allowed the following claims to proceed:

> Claim 1:    Eighth Amendment deliberate indifference claim against Defendants Wizkamp, Walker, Turney, and O'Bear for their alleged ongoing refusal of medical treatment for Plaintiff's alleged injuries that they observed on April 14, and 15, 2025;

> Claim 2:    Eighth Amendment cruel and unusual punishment claim against Defendants Walker, Turney, and O'Bear for their alleged harassing and threatening conduct towards Plaintiff on April 14, and 15, 2025;

(Doc. 13).

Plaintiff has moved to amend this lawsuit, repeating his allegations against the original four defendants, and adding entirely new allegations against nine additional defendants.  (Doc. 59).  The new allegations concern the lead-up to the April 14, 2025, altercation with staff, and the alleged excessive force by staff in association with the altercation.  Plaintiff also incorporates state law theories of relief.  Grievance documents

that Plaintiff attached to the proposed amended complaint show that he filed grievances about these new allegations in April and May of 2025, and he fully exhausted those grievances through the Administrative Review Board by September of 2025.  (Doc. 59-2 at 2-13).  The proposed amended complaint was tendered in December of 2025.

Turning to the motion for summary judgment, Defendants identified no exhausted grievances relevant to this lawsuit that were submitted prior to the April 17, 2025, filing of the complaint, so they argue this lawsuit must be dismissed.  By contrast, Plaintiff argues that the grievance process was unavailable from April 14-17, 2025.  He admits that he was notified on April 18, 2025, that one of his grievances was accepted for filing, but maintains that this should not undermine his unavailability argument.  Plaintiff also argues that this case implicates *Perttu*, and thus if there is a genuine exhaustion dispute it should be deferred for trial.

### FINDINGS OF FACT

With the initial complaint, Plaintiff tendered copies of grievances he alleges he drafted on April 14 and 15 that he was not allowed to file.  (Doc. 1 at 15-18).  The first, allegedly penned on April 14, 2025, alleges that plaintiff repeatedly sought medical and mental health care from Walker, Turney, O'Bear, and Wizkamp.  (Doc. 1 at 15).  The grievance further alleges that Walker gave neighboring inmates extra food trays in exchange for their promise to constantly harass Plaintiff.  (*Id.* at 16).  The second, dated April 15, 2025, alleges that Plaintiff arrived at restrictive housing one day earlier and was in need of medical attention.  (*Id.* at 17).  Plaintiff alleged he was in a filthy cell with cuts

and swelling on his wrist, ankles, face, neck, head, and ribs, and it alleged he had pepper spray still on his body.  (*Id.* at 17-18).

Plaintiff attached two grievances to his summary judgment response.  One is the April 15, 2025, grievance, which was denied emergency processing status by the Warden on April 21, 2025. (Doc. 67 at 17-18).  A counselor rejected the grievance on May 19, 2025, as failing to cite an incident date. (*Id.* at 17).  It appears that Plaintiff added a handwritten note on May 22, 2025, suggesting he did not agree and that he was seeking further processing of the matter by the grievance officer.  (*Id.* at 18).  The second grievance attached to the summary judgment response is dated April 16, 2025, and it was stamped as received by the prison on April 25, 2025.  (Doc. 67 at 22-23).  In the grievance Plaintiff alleged that on April 16, 2025, he informed staff investigating the incident that only one attempt had been made to remove pepper spray from his eyes and that he still desired medical care for his injuries.  (*Id.*).  Some of the grievance is hard to discern because the copy is light, but it appears that Plaintiff alleges he was taken to the healthcare unit where he was again refused care for his injuries.  (*Id.*).  The grievance was denied emergency status by the Warden on April 28, 2025.  (*Id.* at 22).

In support of his response to summary judgment, Plaintiff provided a sworn affidavit. (Sanders Aff., Doc. 67 at 14-16).  Plaintiff attests that on April 14, 2025, he asked for a grievance to be placed in the grievance box during the first count of the 11pm-7am shift, but he was told he would have to wait for the counselor to circulate the grievance box.  (*Id.* at ¶ 1).  He alleges on April 15, 2025, he asked numerous "correctional officers" to place his grievance in the box, but they all said they could not handle grievances, and

Plaintiff would have to await the counselor.  (*Id.* at ¶¶ 2-3).  Plaintiff alleges he was told the counselor would only collect grievances on Wednesdays, but he contends no counselor came to collect grievances on Wednesday, April 16, 2025.  (*Id.* at ¶¶ 4-5). Plaintiff alleges he then created handwritten copies of his grievances and mailed them to the warden, majors, and the grievance office.  (*Id.* at ¶ 6).  He attests that on April 17, 2025, the counselor and other staff refused to accept his grievance for filing.  (*Id.* at ¶ 7). However, on April 18, 2025, Plaintiff received a post-it note explaining that institutional mail was not the right way to file grievances but that his April 15, 2025, grievance would be accepted for filing.  (*Id.* at 8).  Plaintiff attests that prior to filing this lawsuit the local grievance policy was not being followed and his requests to file a grievance were met with hostility.  (*Id.* at ¶ 10).

In support of the response, Plaintiff also tendered an excerpt of the prison handbook which states that in segregation a portable locked box shall be circulated to collect grievances daily, excluding weekends and holidays.  (Doc. 67 at 19).

## CONCLUSIONS OF LAW
A.  Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving part."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available

administrative remedies.  42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).  "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving."  *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact.  *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing.").  If there are contested factual issues about exhaustion, a district court holds a hearing, and the judge resolves disputes on facts, including witness credibility.  However, in *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (June 18, 2025), the Supreme Court held that an inmate is entitled "to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment."  In *Perttu* an inmate alleged that a guard sexually abused him, and that the same guard destroyed his grievances and threatened to kill him if he filed additional grievances.  A claim was allowed to proceed under the First Amendment about the alleged destruction of grievances.  After an evidentiary hearing, a judge concluded that the inmate's witnesses were not credible on the issue of destroyed grievances, and thus the case was dismissed for failure to exhaust.  *Id.* at 1799.

The Sixth Circuit reversed the dismissal for failure to exhaust in *Perttu* on the view that a jury trial was required because the resolution of the exhaustion issue would also implicate a material factual dispute of the substantive First Amendment retaliation claim.

In essence, both the exhaustion issue (plaintiff's ability to file grievances) and the merits of the retaliation claim (about the destruction of grievances) would turn on the same exact facts.  The Supreme Court granted certiorari to resolve a circuit split between the line of reasoning used by the Sixth Circuit, and the Seventh Circuit's approach in *Pavey* that leaves all exhaustion disputes to a judge.  *Id.* at 1799.  Ultimately, *Perttu's* holding is limited to exhaustion issues that are intertwined with and have common factual disputes with the substantive claims, and the Supreme Court did not go so far as to endorse the position that *all* exhaustion issues must be resolved by a jury.  *Id.* at 1800.  The *Perttu* Court's holding was grounded in statutory interpretation of the PLRA, rather than engaging in a constitutional analysis of the Seventh Amendment.  Subsequently, the Seventh Circuit has commented that courts should resolve the *Perttu* issue before reaching the merits of an exhaustion dispute.  *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims).  In two unpublished panel opinions, the Seventh Circuit has expressly suggested that if there is no intertwinement between the facts concerning exhaustion and the facts surrounding the merits of the substantive claims, then *Perttu* is not invoked.  *Blake v. Wexford Health Source, Inc.*, 2026 WL 1122463 at *2, n. 3 (7th Cir. Apr. 24, 2026) (noting that a claim against Wexford for a harmful policy or custom had no intertwinement with disputes about the procedural adequacy of Plaintiff's three grievances); *Whitfield v. Wexford Health Sources, Inc.*, 2026 WL 2030373 at * 3, n. 1 (7th Cir.

July 14, 2026) (finding that a complaint about deliberate indifference to a medical need was not intertwined with an exhaustion dispute).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. _Id._ If a grievance concerns protective custody, a plaintiff is allowed to file that grievance directly with the ARB. 20 ILL. ADMIN. CODE § 504.870(a)(1)

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. _Id._ The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. _Id._ If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f).

B. Analysis

Plaintiff argues that his case falls within the bounds of _Perttu_, so under _Breyley v. Fuchs,_ the Court must first consider if there is intertwinement between the facts necessary to resolve the exhaustion issue and the facts that will be necessary to examine the substantive merit of Plaintiff's claims. Plaintiff specifically argues that _Perttu_ is

implicated because he was harassed and even mentioned a threat not to file a grievance in his complaint. (Doc. 67 at 13). Thus, he argues credibility of the same witnesses must be tested to resolve the exhaustion issue and the merits of his claim, and *Perttu* applies. (*Id.*). Defendants do not address the applicability of *Perttu* in their motion, and they did not file a reply brief.

Here, the Court is not persuaded that there is intertwinement as contemplated by the *Perttu* Court. While it is true that Plaintiff alleged in his complaint that the defendants harassed him, and he is proceeding on an Eighth Amendment claim linked to that harassment, he did not allege that the four named defendants personally obstructed his ability to lodge grievances and he is not proceeding on a substantive claim about his access to the grievance process. This makes Plaintiff's situation materially different from *Perttu*, where the inmate alleged that a defendant harassed him and tore up a grievance, and the inmate proceed on a First Amendment claim against the same defendant concerning his access to the grievance system. Here, Plaintiff is proceeding solely on two Eighth Amendment claims concerning medical care and harassment, neither of which pertain to access to the prison's grievance process. The Court is currently assessing the accessibility of the grievance process and Plaintiff's use of the process. The facts to be assessed at the exhaustion phase simply have no link to the named defendants or the Eighth Amendment claims against them. Thus, the Court finds that *Perttu* does not apply, and it will now proceed to assess the availability of the grievance process and Plaintiff's use of the process.

On the issue of availability, Plaintiff argues that the grievance process was unavailable because staff refused to accept his grievance for filing and directed him to wait for the counselor to circulate the box once a week on Wednesday. He contends this did not follow prison policy, and that on the first Wednesday the box should have been circulated (April 16, 2025) it was not. As with the *Perttu* issue, Defendants did not make any argument in their Motion (Doc. 60) on the issue of availability.

Despite the Defendants' lack of specific argument, the Court finds Plaintiff's unavailability argument unavailing because he admits that on April 18, 2025, just one day after filing his complaint he had a grievance that was accepted for filing. In fact, it appears from the exhibits to Plaintiff's response, as well as the exhibits to his proposed amended complaint, that he had multiple grievances accepted for filing in April of 2025 surrounding the events in this complaint, and those attached to the amended complaint were processed at all levels of review (Doc. 59-2 at 2-13). Plaintiff's own documents thus refute the notion that the grievance process was truly unavailable. At best, Plaintiff has identified what could be characterized as a temporary unavailability.

Neither side makes mention of *Fletcher v. Menard*, 623 F.3d 1171 (7th Cir. 2010) in their briefing, but a brief discussion illuminates why the Court finds it appropriate to reject Plaintiff's complaint as prematurely filed. In *Fletcher*, the Court explained that there is no imminent danger exception to the exhaustion requirement for inmates in the Illinois Department of Corrections because the Department has an emergency grievance process to address imminent dangers. The Court held that an inmate who filed a grievance on the same day as an alleged beating, and then filed a lawsuit only two days later, failed to

exhaust his administrative remedies.  The Court stated that the inmate had to wait more than two days to test the grievance process availability before he could file suit, and it emphasized that he was not facing such an imminent threat in the interim that it was probably the emergency grievance process would fail to help him.

The situation in *Fletcher* is strikingly similar to this case.  Plaintiff had injuries from an alleged beating, and he made several attempts to file grievances by asking for a physical box or sending missives to prison administrators about his desire to lodge a grievance.  He only waited two days after his attempts and letters before filing this case, but as it turns out, his efforts worked just one day later when he was notified that one of his mailed grievances would be filed.  Plaintiff managed to lodge an additional grievance dated April 16, 2025, and receipted by the prison April 25, 2025.  (Doc. 67 at 22).  Had Plaintiff's attempts to lodge grievances turned out differently, perhaps he would have a genuine dispute about unavailability, but given how his attempts turned out, there is no basis for him to proceed on a theory of unavailability.

This outcome is important because it emphasizes that courts are not meant to serve as an emergency complaint department for things that transpire at the prison.  An alleged temporary unavailability of the grievance process is simply not enough to set aside the requirements of PLRA exhaustion, particularly where the Court is not convinced that Plaintiff faced a danger so imminent that the emergency process could afford him no relief.  If the Court were to afford Plaintiff more leeway on the issue of unavailability in this case, inmates could flood the courts with emergency suits without hardly even giving the grievance process a chance to work, and this would defeat the purpose of the PLRA's

exhaustion requirement.  Therefore, the Court concludes that Plaintiff's showing of a fleeting temporary unavailability did not relieve him of the obligation to exhaust his grievances before initiating this suit.

Defendants evidence credibly shows that Plaintiff did not lodge a grievance about the events in this complaint that was tendered to the Administrative Review Board for final review before filing this suit.  As such, Plaintiff's suit was filed prematurely, and it must be dismissed.  *See e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (a sue first, exhaust later approach is not appropriate).  The dismissal will be without prejudice, and if Plaintiff has properly exhausted his grievances from April 14-16, 2025, after filing this case, he may refile his claims against the Defendants in this case.

Plaintiff has also filed a Motion to Amend (Doc. 59).  His proposed amended complaint significantly alters the landscape of this lawsuit, seeking to add numerous claims against officers for First Amendment violations in the months leading up to April of 2025, for the alleged use of excessive force by staff on April 14, 2025, for the subsequent refusal of medical care in mid- to late-April 2025, as well as many related state law claims. The Amended Complaint expands the case from 4 defendants to 13, with a hint that more defendants may be added later as Plaintiff further investigates this matter.  The assertions against the four defendants in this case and the two claims against them remain largely unchanged.  Exhibits attached to the proposed amended complaint tend to suggest that between the initial April 17, 2025, filing of this lawsuit, and the December 17, 2025, filing of the proposed amended complaint, Plaintiff managed to fully exhaust claims against some of the nine additional defendants.  While it is not improper for a party to add new

parties and newly exhausted claims via an amended complaint, the effect of the exhaustion ruling in this order would in essence mean the entire original lawsuit is being dismissed in its entirety and a new case is taking its place against an entirely new set of defendants over new issues. Rather than split hairs over which claims may or may not proceed, or which of those may be exhausted, the Court finds it preferable to simply deny leave to amend without prejudice. It is possible that in the intervening months Plaintiff has exhausted his early grievances against Walker, Turney, O'Bear, and Wizkamp, and by denying leave to amend and dismissing this whole suit, Plaintiff can initiate a new action that joins the claims against these four with the new claims and parties in the amended complaint.

The net impact of the findings in this order on exhaustion against Walker, Turney, O'Bear, and Wizkamp, and the rejection of the amended complaint, is that Plaintiff cannot proceed in this case, but he can proceed in a new action. Given that the events in this case allegedly occurred from January of 2025 onward, and given that Plaintiff exhausted some of his newer claims as recently as September of 2025, he will have ample time to refile a new action within the applicable two-year statute of limitations.

## DISPOSITION

The Motion for Summary Judgment on the issue of exhaustion filed by all Defendants (Doc. 60) is **GRANTED**. This case is dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies prior to filing this suit. The Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and to close this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: August 7, 2026

_____
DAVID W. DUGAN
United States District Judge